UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ADVANSIX INC.,**<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>**ALLIANZ GLOBAL RISKS US INSURANCE COMPANY,** *et al.*,<br><br>　　　　　Defendants. | **Civil Action No. 2:21-cv-07962-MCA-CLW**<br><br>**OPINION** |

**CATHY L. WALDOR, U.S.M.J.**

**I.　Introduction**

This matter is before the Court on the motion of plaintiff AdvanSix Inc. ("AdvanSix") seeking to compel underwriting materials from the insurer defendants (the "Insurers") and for sanctions (ECF No. 88). The motion is fully briefed and has been referred to the undersigned by the Honorable Madeline C. Arleo. The Court has carefully considered the parties' submissions and decides the matter without oral argument per FED. R. CIV. P. 78(b) and Local Civil Rule 78.1. For the reasons stated, and subject to the limitation set forth below, the portion of AdvanSix's motion seeking discovery is **GRANTED**. The portion of AdvanSix's motion seeking sanctions is **DENIED WITHOUT PREJUDICE**.

**II.　Background**

As summarized in the first amended complaint,

> [t]his is a diversity action for Breach of Contract, Declaratory Judgment, and First-Party Bad Faith that arises out of AdvanSix's insurance claim for business interruption and extra expense, which AdvanSix first submitted to the Insurers . . . in June 2019. The source of these losses is the catastrophic fire and explosion on June 21, 2019 at the Philadelphia Energy Solutions ("PES") refinery in Philadelphia, which previously supplied AdvanSix with critical materials for its business and production chain.

*See* ECF No. 15 (the "FAC") at ¶ 1. AdvanSix alleges that the Insurers have refused to cooperate in the handling of AdvanSix's claim or to reimburse AdvanSix per AdvanSix's insurance policies with the Insurers. *See id.* at, *e.g.*, ¶ 4 ("To date, the Insurers have failed to pay a single dollar to AdvanSix from an eight-figure insurance claim. They have similarly refused to provide any timeline for payment, a coverage position, or the resolution of this claim . . . .").

Discovery disputes have plagued this case almost since its inception. Presently at issue is AdvanSix's attempt to obtain the Insurers' underwriting guidelines and underwriting files; *i.e.*, materials "that relate to the proper construction, application, interpretation, and/or calculation of the policy provisions that are in dispute." *See* ECF No. 88 at 5. AdvanSix requests documents responsive to its document demands numbered 9, 10, 11, 13, 15, 17, and 18; and information responsive to its second interrogatory, which likewise concerns underwriting. The Insurers object on relevance and proportionality grounds. The Court previously directed the Insurers to submit three sample underwriting files for AdvanSix's review in an attempt "to determine relevance and proportionality with respect to turning over the remaining files." *See* ECF No. 77. These efforts failed to resolve the issue and the instant motion followed.

### III. Legal Standard

Federal Rule of Civil Procedure 26(b)(1) permits a party to

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FED. R. CIV. P. 26(b)(1). "[C]ourts have construed [Rule 26] liberally, creating a broad range for discovery which would encompass any matter that bears on, or that reasonably could lead to

other matter that could bear on, any issue that is or may be in the case." *Stepanski v. Sun Microsystems, Inc.*, 2011 U.S. Dist. LEXIS 156127, at *63 (D.N.J. Dec. 9, 2011) (quoting *Jones v. Derosa*, 238 F.R.D. 157, 163 (D.N.J. 2006) and citing cases), *report and recommendation adopted*, 2012 U.S. Dist. LEXIS 128328 (D.N.J. Sept. 10, 2012). However, while "the scope of discovery is broad, it is not unlimited. Discovery is not permitted where the discovery sought is irrelevant to the claims at issue, where the requests were tendered in bad faith, or where the requests are unduly burdensome." *Gutierrez v. Johnson & Johnson, Inc.*, 2002 U.S. Dist. LEXIS 15418, at * 11 (D.N.J. Aug. 13, 2002) (citing *Young v. Lukens Steel Co.*, 1994 U.S. Dist. LEXIS 1462 (E.D. Pa. 1994)). "It is well-established that the party opposing discovery has the burden to raise an objection, then the party seeking discovery must demonstrate the relevancy of the requested information. . . . Once this showing is made, the burden switches again to the party opposing discovery to show why discovery should not be permitted." *Cordero v. Warren*, 2016 U.S. Dist. LEXIS 183793, at *2 (D.N.J. Oct. 4, 2016), *aff'd*, 2017 U.S. Dist. LEXIS 83332 (D.N.J. May 31, 2017) (quoting *Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 101 (E.D. Pa. 2010)).

**IV.** **Discussion**

    **a. Relevance**

        **1. Relevance to Contract Claim**[1]

AdvanSix first contends that the underwriting materials are discoverable apart from its claim sounding in bad faith; in other words, that these documents support AdvanSix's breach of contract claim (and ostensibly that for declaratory judgment). Citing *TIG Ins. Co. v. Tyco Int'l Ltd.*, 2010 U.S. Dist. LEXIS 120342 (M.D. Pa. Nov. 12, 2010) and *Nestle Foods Corp. v. Aetna*

---

[1] The Court has ruled that "Defendant[s] will produce discovery on both the bad faith claim and breach claim." ECF No. 67.

3

*Cas. & Sur. Co.*, 135 F.R.D. 101 (D.N.J. 1990), AdvanSix argues that the "underwriting guidelines are discoverable to determine whether an ambiguity exists [in the parties' insurance policies] and to assist the court in determining how an insurer interprets its policies." ECF No. 88 at 6. Both *TIG* and *Nestle Foods* support the notion that a party may be entitled to extrinsic evidence (such as underwriting materials) to establish an ambiguity in a contract. *See TIG*, 2010 U.S. Dist. LEXIS 120342, at *4 ("[E]xtrinsic evidence may be particularly useful for establishing the existence of an ambiguity. . . . Here, . . . underwriting manuals are relevant to determining whether an ambiguity exists . . . ."); *Nestle Foods*, 135 F.R.D. at 105 ("[I]n order for plaintiff to determine whether there is a claim for ambiguity, plaintiff must be allowed to explore the creation of the language and whether the intent of the drafter(s) is inconsistent with its application. . . . '[E]xtrinsic evidence might be admitted to interpret . . . clauses such as the ones in question in this case. The implication, therefore, is that such extrinsic evidence is discoverable since it may lead to admissible evidence at trial.'") (quoting *Leksi, Inc. v. Federal Insurance Co.*, 129 F.R.D. 99, 103-04 (D.N.J. 1989)).

The Insurers' principal objection to this argument is essentially that AdvanSix is placing the horse before the cart, as there has been no indication — let alone demonstration — that the subject policies are ambiguous. As will be elucidated, the Court agrees with the Insurers on this point. AdvanSix concedes "the lack of an express allegation of ambiguity" and the closest it comes in this regard is a reference to the FAC's allegation that "the Insurers . . . feigned uncertainty as to which Policy deductible should apply." *See* ECF No. 107 at 6 (citing FAC at ¶¶ 109-10). Even if this can be construed as a disagreement over how to interpret the policies (which itself is questionable), "[d]isagreement between the parties over the proper interpretation of a contract does not necessarily mean that a contract is ambiguous." *Viera v. Life Ins. Co. of*

4

*North America*, 642 F.3d 407, 419 (3d Cir. 2011) (quoting *12th Street Gym, Inc., Robert Guzzardi v. General Star Indem. Co.*, 93 F.3d 1158, 1165 (3d Cir. 1996)). Rather, "[a] genuine ambiguity exists 'where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.'" *Beach Glo Tanning Studio Inc. v. Scottsdale Ins. Co.*, 2021 U.S. Dist. LEXIS 102120, at *16 (D.N.J. May 28, 2021) (quoting *Lee v. Gen. Accident Ins. Co.*, 337 N.J. Super. 509, 513 (N.J. Super. Ct. App. Div. 2001)). No such thing has been demonstrated here.

The Insurers thus argue that in the absence of a concrete contractual ambiguity, an order compelling production of extrinsic evidence is improper. Like AdvanSix, they cite district court cases supporting their position. *See, e.g.*, *Beach Glo*, 2021 U.S. Dist. LEXIS 102120, at *18 ("[T]he Virus Exclusion is not ambiguous. As a result, the Court should not consider extrinsic evidence in interpreting the Virus Exclusion, and discovery is not warranted here.") (citing, *e.g.*, *Nye v. Ingersoll Rand Co.*, 783 F. Supp. 2d 751, 761 n.1 (D.N.J. 2011) ("When the policy is not ambiguous on its face, extrinsic evidence may not be used to create an ambiguity.")). Neither side provides binding authority in support of its position, nor is the Court aware of any.

This leaves to the Court's discretion the question of whether extrinsic evidence such as underwriting materials may be discoverable to demonstrate a contract ambiguity, or if such evidence may be considered only once an ambiguity has been established. On this question, the Court finds instructive the cogent analysis set forth in *Westfield Ins. Co. v. Icon Legacy Custom Modular Homes*, 321 F.R.D. 107 (M.D. Pa. 2017). The court there observed

> the apparent chicken-or-egg problem that coverage cases present: extrinsic evidence may be used to demystify facially ambiguous language, but in the first place, a determination of ambiguity may depend upon or permit consideration of that very same extrinsic evidence. This puts two sentiments at war: How can an insured be deprived of potentially relevant evidence before it has a chance to

> prove such evidence's relevance? And, how can insurer be forced to produce a bulk of evidence whose relevance, if any, awaits subsequent determinations?

*Id.* at 117. *Westfield* resolved this tension by hinging the issue on

> whether a threshold showing of ambiguity has been made. Perhaps more specifically, this means that a movant should be able to point to specific language in the contract that is facially ambiguous or that extrinsic evidence is likely to render genuinely ambiguous. . . . Such a showing is not satisfied by bald assertions of ambiguity. . . . [T]hat low of a threshold would be untenable, because any coverage dispute could explode into unlimited discovery solely on an insured's *ipse dixit* assertions of ambiguity. . . . [A] movant must make some affirmative showing that the mutual intent of the parties is contrary to the agreement's facial meaning and had previously been objectively expressed through, for example, "evidence of prior agreements and communications of the parties as well as trade usage or course of dealing." *Aleynikov v. Goldman Sachs Group, Inc.*, 765 F.3d 350, 362 (3d Cir. 2014) (Fisher, J.). . . . [R]equiring insureds to (1) point to specific language in the agreement itself that is genuinely ambiguous or that extrinsic evidence is likely to render genuinely ambiguous; and (2) show that the requested extrinsic evidence is also likely to resolve the ambiguity without imposing unreasonable expense, is a reasonable solution to this somewhat perplexing procedural dilemma.

*Id.* at 113-14, 117 (cleaned up).

The Court finds *Westfield*'s analysis and conclusion on point. As noted, adopting either party's position results in a somewhat difficult result: either AdvanSix will be tasked with demonstrating an ambiguity without the benefit of evidence that may aid it in doing just that, or the Insurers will have to produce extrinsic discovery for the purpose of interpreting a contract ambiguity that has not yet been shown to exist (nor may it ever). For the reasons set forth in *Westfield*, requiring some threshold showing of an ambiguity, the resolution of which may turn on exploration of extrinsic evidence, seems the most reasonable and equitable solution to this quandary. Because AdvanSix has not "point[ed] to specific language in the agreement itself that is genuinely ambiguous" or "show[n] that the requested extrinsic evidence is also likely to

resolve the ambiguity without imposing unreasonable expense" — and certainly has not made an "affirmative showing that the mutual intent of the parties is contrary to the agreement's facial meaning" — *see id.*, the Court rejects AdvanSix's argument that the underwriting materials are discoverable to aid in contract interpretation and therefore relevant to its breach of contract claim.

### 2. Relevance to Bad Faith Claim

AdvanSix fares better in its argument that the underwriting materials are relevant to its bad faith claim.[2] Initially, there is a clear distinction between the discovery appropriate in cases involving bad faith allegations as opposed to those involving only claims for breach of contract. *See J. Fletcher Creamer & Son, Inc. v. Hiscox Ins. Co.*, 2020 U.S. Dist. LEXIS 96986, at *13 (D.N.J. June 2, 2020) (observing consensus among "the overwhelming majority of courts that bad faith claims regularly demand different witnesses and documentary proof from breach of contract claims") (citing cases). Somewhat more pointedly, courts in this circuit consistently hold that underwriting materials are relevant to bad faith claims such as the one asserted here. *See, e.g., Cont'l Cas. Co. v. J.M. Huber Corp.*, 2017 U.S. Dist. LEXIS 208182, at *47 (D.N.J. Dec. 19, 2017) (in case involving bad faith allegations, court held the "drafting history and underwriting of the policies at issue in this matter . . . is indeed relevant and discoverable")

---

[2] Under New Jersey law,

> an insurance company may be liable to a policyholder for bad faith in the context of paying benefits under a policy. . . . [B]ad faith is established by showing that no debatable reasons existed for denial of the benefits. In the case of processing delay, bad faith is established by showing that no valid reasons existed to delay processing the claim and the insurance company knew or recklessly disregarded the fact that no valid reasons supported the delay.

*Pickett v. Lloyd's (A Syndicate of Underwriting Members)*, 131 N.J. 457, 481 (1993). AdvanSix alleges that the Insurers' unjustified delays in processing and paying its claim constitute bad faith. *See generally* FAC, Count III ("First-Party Bad Faith").

7

(citing cases); *Westport Ins. Corp. v. Hippo Fleming & Pertile L. Offs.*, 319 F.R.D. 214, 217-18 (W.D. Pa. 2017) ("[P]roduction of the underwriting materials is proper under the facts of this case. . . . Given the bad faith claim and the related allegations, the underwriting materials may well be relevant. . . . Therefore, the Court will grant the motion to compel with respect to the underwriting manual and underwriting file."); *cf. Consugar v. Nationwide Ins. Co. of Am.*, 2011 U.S. Dist. LEXIS 61756, at *17 (M.D. Pa. June 9, 2011) (in bad faith action, "requests for [underwriting] files on other claims, since they could reveal patterns of denials of claims similar to plaintiff's are reasonably calculated to lead to admissible evidence").

The Insurers' counter to this authority is unconvincing. Their primary argument is that because "AdvanSix does not allege any bad faith conduct during the underwriting of its policy, [and] Defendants have not asserted a claim based on misrepresentations made during underwriting", the underwriting materials are irrelevant to the bad faith claim. *See* ECF No. 98 at 11-13. This is a red herring. The trigger point for underwriting materials' relevance is not an allegation of bad faith specifically relating to underwriting. In *Westport*, for example, the court expressly observed that "while Hippo does not bring any underwriting claims, it does bring a bad faith claim", thus rendering the underwriting files discoverable. *See* 319 F.R.D. at 217-18.[3] The Insurers provide no authority for the proposition that underwriting materials are relevant only where a party has alleged bad faith in connection with underwriting, and indeed, the case law appears to indicate the very opposite.

---

[3] The Insurers correctly observe that *Westport* involved claims that the insured made misrepresentations in its insurance application, which the Insurers characterize as underwriting-specific allegations that are absent here. *See* ECF No. 98 at 12. While true, *Westport* cited this fact in a footnote as a secondary reason why the underwriting materials "may also become relevant". *See* 319 F.R.D. at 218 n.1. *Westport*'s primary rationale holds true with full force here.

The Insurers also stress the purported notion that "the subject manuscript Policy (including each of the relevant policy provisions) was drafted by Aon, AdvanSix's insurance broker." *See* ECF No. 98 at, *e.g.*, 6. The above-referenced underwriting samples directly refute this point. While it may be true that the subject policies derived from a manuscript drafted by Aon, the samples extinguish any contention that the final versions of the policies came about without any input from the Insurers.[4] Among myriad examples is an underwriting document listing twenty-one "CHANGES WE MADE". *See* ECF No. 88-6 at 13. This and similar passages from the sample files demonstrate not only that the Insurers had a hand in drafting the policies at issue, but that the outstanding underwriting files are likely to include such drafting history, further supporting the case for these materials' relevance.

For the reasons stated, the Court concludes that the underwriting materials are relevant to AdvanSix's bad faith claim.[5]

### b. Proportionality

The Insurers also argue that production of the underwriting materials would constitute a burden disproportionate to the needs of the case. Counsel represents that production would entail approximately 100 hours of attorney work and fifty hours of paralegal work plus additional time and sums for the Insurers' internal personnel and document management vendors. *See* ECF No. 98-4 at ¶¶ 10-12.

---

[4] To this point, the Insurers conceded at oral argument that "each insurance company can . . . attach endorsements or riders, which some of them did." *See* ECF No. 102 at 23:8-9.

[5] The Court briefly notes its disagreement with the arguments raised in AdvanSix's supplemental authority (ECF No. 138). First, the deposition testimony of defendant Endurance's 30(b)(6) witness discussed therein appears to demonstrate the insurer's reference to "a schedule of values that the *insured provides to underwriting*" in making certain determinations. *See id.*, Ex. A at 336:2-3 (emphasis added). Second, the disclosure of materials in the *PES* litigation is irrelevant. The insurers who were defendants in that case are not bound by their prior litigation strategy, and in any event, this case involves ten insurers who were not parties to that matter.

While these certainly are not modest expenditures, the Court disagrees that they constitute a burden disproportionate to the needs of the case: AdvanSix seeks an eight-figure sum to compensate a total loss, and there are fourteen seemingly well-funded insurance companies defending this matter. *Cf. Maritz Holdings v. Certain Underwriters at Lloyd's London*, 2020 U.S. Dist. LEXIS 209794, at *13 (E.D. Mo. Nov. 10, 2020) (finding proportionality satisfied in view of plaintiff seeking to recover $5.2 million); *Physicians All. Corp. v. WellCare Health Ins. of Ariz., Inc.*, 2018 U.S. Dist. LEXIS 31001, at *10 (M.D. La. Feb. 27, 2018) (discovery proportional where, among other factors, defendant "has adequate resources to produce any recoverable documents").

Because the Court thus finds the underwriting materials relevant to AdvanSix's bad faith claim and proportional to the needs of the case, it concludes these materials are discoverable. It proceeds to address the scope of disclosure.

    c. **Scope of Disclosure**

The Insurers argue that in the event the Court finds the underwriting materials discoverable, it should limit the scope of disclosure by date and subject matter; *i.e.*, (i) that the Insurers should only have to produce materials relating to the 2019-20 insurance policies (which were in effect at the time of the loss), as opposed to the 2017-18 and 2018-19 policy periods; and (ii) that production should be limited to those underwriting materials relating to the contract terms specifically cited in the pleadings.

The Court will partially grant the Insurers' request for a temporal limitation. It does seem reasonable for the Insurers not to have to provide underwriting documents relating to irrelevant and outdated policy provisions. But this limitation itself will be modest. To wit: the Insurers need not provide underwriting materials from the 2017-18 or 2018-19 policy periods if such materials

(i) concern policy provisions that are absent from the 2019-20 policy; **_and_** (ii) bear no relation to the claims or defenses in this action. Therefore, underwriting documents from these periods which concern portions of the policy that survived to the 2019-20 version must be disclosed.[6] Likewise, any such documents that may bear upon the present claims or defenses are to be produced. In addition, in the event the Insurers withhold documents under this exception, they shall provide AdvanSix with a log of withheld documents substantially in the form called for by FED. R. CIV. P. 26(b)(5)(A).

The Court will deny the Insurers' request to limit disclosure to materials concerning the portions of the policies specifically referenced in the pleadings. As discussed above, the Court is ordering disclosure as relevant to AdvanSix's bad faith claim; it would therefore make little sense for the contours of such disclosure to be defined by the breach of contract claim. Moreover, this matter's proceedings to date suggest that such a limitation would almost certainly result in further disputes and voluminous letter-writing requiring Court intervention in a case that already has been substantially hampered by such squabbles and should be proceeding toward resolution on the merits. The Court therefore denies the Insurers' request for a subject matter limitation on the ordered production.

   d. **Sanctions**

AdvanSix's motion includes a request for Rule 37 sanctions in connection with its various efforts to procure discovery from the Insurers. After filing the instant motion, AdvanSix brought a separate motion for Rule 37 sanctions. *See* ECF No. 134. The applications overlap, and the Court's decision on the present motion may impact AdvanSix's sanctions request. The Court

---

[6] This carve-out is to be construed narrowly, such that materials may be excluded only if they concern a portion of a 2017-18 or 2018-19 policy that does not appear in any form in the 2019-20 policy. Minor variations or edits from the earlier years to 2019-20 do not constitute excludable provisions for purposes of this exception.

prefers to streamline these matters. In the interest of judicial economy, therefore, the Court will deny without prejudice AdvanSix's instant sanctions request, administratively terminate the separate sanctions motion, and direct AdvanSix to file an omnibus Rule 37 motion.

### V. Conclusion

An appropriate Order follows.

Dated: January 13, 2023

*/s/ Cathy L. Waldor*
Cathy L. Waldor, U.S.M.J.